Slip Op. 13-12

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **JSC ACRON**, <br><br>    Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br>    Defendant, <br><br> and <br><br> **COMMITTEE FOR FAIR AMMONIUM NITRATE TRADE**, <br><br>    Defendant-intervenor. | Before: Timothy C. Stanceu, Judge <br><br> Court No. 11-00496 |

## **OPINION**

[Granting defendant's motion to dismiss an action challenging denial of changed circumstances review]

Date: January 25, 2013

*Daniel J. Cannistra* and *David C. Wolff*, Crowell & Moring LLP, of Washington, DC, for plaintiff JSC Acron.

*Michael D. Panzera*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director. Of counsel on the brief was *Mykhaylo Gryzlov*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Valerie A. Slater* and *Margaret C. Marsh*, Akin, Gump, Strauss, Hauer & Feld, LLP, of Washington, DC, for defendant-intervenor Committee for Fair Ammonium Nitrate Trade.

Stanceu, Judge: Plaintiff JSC Acron ("Acron") challenges the refusal of the International

Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") to

conduct, under section 751(b) of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1675(b) (2006),[1] a "changed circumstances" review of an antidumping duty order on imports of solid fertilizer-grade ammonium nitrate ("subject merchandise") from the Russian Federation. Compl. ¶¶ 12, 17-18, 33 (Dec. 7, 2011), ECF No. 2.  Acron, a Russian producer of solid fertilizer grade ammonium nitrate, requested a changed circumstances review to obtain a reduction in the 253.98% cash deposit rate applicable to all imports of subject merchandise, a rate established more than twelve years ago in the less-than-fair-value investigation.  *Id.* ¶¶ 12, 17; *Notice of Final Determination of Sales at Less Than Fair Value; Solid Fertilizer Grade Ammonium Nitrate From the Russian Federation* 65 Fed. Reg. 42,669, 42,673 (July 11, 2000) ("*Final Determination*").  Before the court is defendant's motion to dismiss this action for lack of subject matter jurisdiction.  Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction (Feb. 13, 2012), ECF No. 8 ("Def.'s Mot.").  The Committee for Fair Ammonium Nitrate Trade ("COFANT"), defendant-intervenor, supports defendant's motion to dismiss.  For the reasons stated below, the court grants defendant's motion and will enter judgment dismissing this action.

## I. BACKGROUND

In response to a petition by COFANT, Commerce initiated the antidumping duty investigation on August 12, 1999.  *Initiation of Antidumping Duty Investigation: Solid Fertilizer-Grade Ammonium Nitrate from the Russian Federation*, 64 Fed. Reg. 45,236, 45,239 (Aug. 19, 1999).  In its preliminary affirmative less-than-fair-value determination ("Preliminary Determination"), Commerce calculated a preliminary weighted-average dumping margin for

---

[1] Unless otherwise indicated, further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2006 edition.

only one Russian producer/exporter, JSC Nevinnomyssky Azot ("Nevinka"), which Commerce preliminarily determined to be the only producer/exporter eligible to be assigned a separate rate. *Notice of Preliminary Determination of Sales at Less Than Fair Value; Solid Fertilizer Grade Ammonium Nitrate From the Russian Federation* 65 Fed. Reg. 1139, 1140-44 (Jan. 7, 2000) ("*Preliminary Determination*").  In response to Nevinka's request for separate rate status, Commerce concluded that Nevinka qualified for such status, *id*. at 1143, having demonstrated "the absence of *de jure* and *de facto* government control over export activities." *Id.* at 1141.  The preliminary rate Commerce calculated for Nevinka was 264.59%, a rate Commerce also applied to the "Russia-wide entity" comprised of all producers or exporters that failed to demonstrate the absence of government control over their export activities. *Id.* ("Because the highest margin on the record is the calculated margin, the Department is assigning this rate as the adverse facts available Russia-wide rate.").  Nevinka's rate was based on the Department's nonmarket economy methodology, under which Commerce determined surrogate values for factors of production using Poland as the surrogate country. *Id*.  In the Preliminary Determination, Commerce stated that "on September 15, 1999, JSC Acron, which had notified the Department of its shipment quantities and values, submitted a letter to the Department, stating that it would not participate in the antidumping investigation on solid fertilizer grade ammonium nitrate." *Id.* at 1140.  Commerce, accordingly, made Acron subject to the Russia-wide rate. *Id.*

   In the Final Determination, Commerce concluded that imports of the subject merchandise were being sold at less than fair value, calculated a weighted-average dumping margin of 253.98% for Nevinka, and, for the same reasons as were stated in the Preliminary Determination, assigned that margin to the Russia-wide entity. *Final Determination*, 65 Fed. Reg. at 42,670-42,673.  Commerce noted that it "included Acron in the Russian-wide entity because it

failed to establish its entitlement to a separate rate." *Id.* at 42,670.  Subsequently, the U.S. International Trade Commission ("ITC") determined that the domestic industry had been materially injured by reason of subject imports.  *Certain Ammonium Nitrate From Russia*, 65 Fed. Reg. 50,719 (Aug. 21, 2000).

An affirmative ITC determination ordinarily would result in an antidumping duty order and issuance of instructions to U.S. Customs and Border Protection ("Customs") to collect cash deposits at the rate assigned by Commerce in the less-than-fair-value investigation.  *See* 19 U.S.C. § 1673d(c).  Commerce did not issue an antidumping duty order, and did not instruct Customs to collect cash deposits, because the governments of the United States and Russia, on May 19, 2000, had entered into a nonmarket economy "suspension agreement" pursuant to 19 U.S.C. § 1673c(*l*), according to which the Russian government agreed to restrict export volumes and ensure that subject exports were sold at or above agreed reference prices.[2] *Final Determination*, 65 Fed. Reg. at 42,673; *see also* 19 U.S.C. § 1673c(f)(3)(B) (authorizing Commerce to refrain from issuing an antidumping duty order while a valid suspension agreement is in place).

In 2006 and 2011, Commerce conducted sunset reviews of the Order.  In both reviews, the Department reaffirmed the 253.98% cash deposit rate calculated in the *Final Determination* and continued to link the Russia-wide entity to that rate.  *Final Results of Five-year Sunset Review of Suspended Antidumping Duty Investigation on Ammonium Nitrate from the Russian Federation*, 71 Fed. Reg. 11,177, 11,178 (Mar. 6, 2006); *Solid Fertilizer Grade Ammonium*

---

[2] The Department had suspended its investigation due to the suspension agreement but subsequently resumed and completed the investigation, at the request of the petitioner.  *See Suspension of Antidumping Duty Investigation: Solid Fertilizer Grade Ammonium Nitrate From the Russian Federation*, 65 Fed. Reg. 37,759 (June 16, 2000).

*Nitrate From the Russian Federation; Final Results of the Expedited Sunset Review of Antidumping Duty Order*, 76 Fed. Reg. 39,847, 39,848 (July 7, 2011).

On April 27, 2011, Commerce issued a notice ("Termination Notice") informing the public that the Russian government withdrew from the suspension agreement on March 3, 2011, that an antidumping duty order on solid fertilizer grade ammonium nitrate from Russia ("Order") would enter into force on May 2, 2011, and that after such date liquidation would be suspended and Customs would begin collecting cash deposits of 253.98% on entries of subject merchandise. *Termination of the Suspension Agreement on Solid Fertilizer Grade Ammonium Nitrate From the Russian Federation & Notice of Antidumping Duty Order*, 76 Fed. Reg. 23,569 (Apr. 27, 2011) ("*Termination Notice*").

On September 26, 2011, Acron, seeking a reduced cash deposit rate, filed its request that Commerce initiate a changed circumstances review. Compl. ¶ 17 (citation omitted). Plaintiff's request stated that in light of "Russia's graduation to market economy status, the original determination [being] based on the absence of factual information and adverse facts available, and Plaintiff's sales at or above normal value for an extended period of time . . . [,] the cash deposit rate calculated for Plaintiff no longer reflected commercial reality." *Id*. ¶ 30. Commerce denied this request by letter on November 7, 2011, finding that Acron's entries during the suspension agreement were not subject to suspension of liquidation or antidumping duties and that Acron's sales during the intervening 12 years, having been made under the suspension agreement, "were not indicative of Acron's current or future commercial behavior." *Id*. ¶¶ 18, 28-29 (citations omitted).

Plaintiff commenced this action on December 7, 2011. Summons, ECF No. 1; Compl. Plaintiff moved for expedited briefing and disposition of this action on February 1, 2012, Mot. to

Expedite, ECF No. 7, but withdrew this motion without explanation on March 1, 2012, Withdrawal of Mot. to Expedite, ECF No. 12. Defendant filed its motion to dismiss for lack of subject matter jurisdiction on February 13, 2012. Def.'s Mot. Plaintiff responded on February 27, 2012, Opp'n to Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 11 ("Pl.'s Opp'n"), and defendant replied on March 19, 2012, Reply to Pl.'s Resp. to Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 13.

In March 2012, Acron exported ammonium nitrate to the United States through an affiliated importer; the merchandise was sold to an unaffiliated party in that same month.[3] Joint Submission Ordered by the Ct. ("Joint Submission"), Attach. 4 (Dept. of Commerce's Jun. 28, 2012 Notice of Intent to Rescind Admin. Review), at 2 (Oct. 23, 2012), ECF No. 15 ("Notice of Intent"). The entry corresponding to the sale occurred on April 25, 2012. *Id*. The entry had an entered value of $75,000 and, accordingly, required Acron's affiliate to make a cash deposit of $190,485. Oral Tr. 21, 31, 43 (Jan. 22, 2013), ECF No. 23.

On April 10, 2012, Commerce issued a notice of opportunity to request an administrative review of the Order, announcing a period of review ("POR") of May 2, 2011 through March 31, 2012. *Ammonium Nitrate From Russia: Correction of Notice of Opportunity To Request Administrative Review*, 77 Fed. Reg. 21,527. Based on timely requests made by Acron and another Russian producer of ammonium nitrate, MCC EuroChem ("EuroChem"), the Department, on May 29, 2012, initiated the first periodic administrative review of the Order. *Initiation of Antidumping & Countervailing Duty Admin. Reviews & Requests for Revocation in Part*, 77 Fed. Reg. 31,568, 31,568-70 ("*Initiation Notice*"). Commerce announced in that notice

---

[3] Plaintiff's attorney publicly disclosed the details of this transaction at a public hearing held on December 20, 2012. Oral Tr. 21-22, 35-36 (Jan. 22, 2013), ECF No. 23.

that it "intend[ed] to issue the final results of [the] review[] not later than April 30, 2013." *Id*. at 31,569.

On June 28, 2012, Commerce issued a notice announcing its intent to rescind the first administrative review in response to information indicating that no merchandise of Acron or of EuroChem had entered the United States during the POR. Notice of Intent at 1. On October 29, 2012, Commerce published a Federal Register notice announcing its decision to rescind the administrative review with respect to Acron and EuroChem for the reasons stated in its earlier notice. *Solid Fertilizer Grade Ammonium Nitrate From the Russian Federation: Notice of Rescission of Antidumping Duty Administrative Review*, 77 Fed. Reg. 65,532, 65,533 (citation omitted) ("*Notice of Rescission*"); *see* Joint Submission, Attach. 8 (Dept. of Commerce's Oct. 22, 2012 Notice of Rescission of Admin. Review and [A]ccompanying Issues and Decision Mem.), at 1 (Oct. 23, 2012).

On October 23, 2012, the parties, in response to an order of the court, made a joint submission of various documents considered by one or both parties to be relevant to the question of jurisdiction. Joint Submission. On November 21, 2012, the court granted COFANT's motion to intervene in this action, Order, ECF No. 20, and deemed timely filed COFANT's reply to plaintiff's opposition to defendant's motion to dismiss, COFANT'S Proposed Reply to Pl.'s Opp'n to Mot. to Dismiss, ECF No. 21. The court held a public hearing on December 20, 2012 to ascertain jurisdictional facts and hear arguments on the jurisdictional question. ECF No. 22. At the conclusion of the hearing, plaintiff indicated in response to the court's inquiry that it would rest upon the existing record compiled by the court for the purpose of ascertaining jurisdictional facts, which consisted principally of the October 23, 2012 joint submission. Oral Tr. 51.

## II. DISCUSSION

Plaintiff contests the Department's decision not to conduct a changed circumstances review in response to its request.[4] Compl. ¶¶ 27-33. Acron's objective in seeking such a review is to require Commerce "to re-establish an accurate and meaningful cash deposit rate." *Id.* ¶ 27. According to Acron, the 253.98% cash deposit rate is no longer representative as it was "(1) calculated in 2000; (2) calculated using the currently inapplicable nonmarket economy methodology and adverse facts available; and (3) based on the data of only one Russian producer." *Id*. ¶ 31. As relief, plaintiff requests a remand order "with instructions to initiate a changed circumstance review." *Id.* at 8 (Prayer for Relief).

In 1984, Congress amended Section 516A(a)(1) of the Tariff Act, 19 U.S.C. § 1516a(a)(1), to remove refusals to conduct changed circumstances reviews from the list of final determinations reviewable thereunder. Trade and Tariff Act of 1984, Pub. L. No. 98-573, §623(a)(1), 98 Stat. 2948, 3040 (1984). In so amending Section 516A, Congress did not preclude judicial review of such refusals under the "residual" jurisdiction provided by section 201 of the Customs Courts Act of 1980 ("Customs Courts Act"), 28 U.S.C. § 1581(i) (2006).[5] § 1581(i). *Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1352-53 (Fed. Cir. 2010). Paragraph (2) of § 1581(i) provides the Court of International Trade

---

[4] Section 751(b)(1) of the Tariff Act of 1930 provides that "[w]henever the administering authority . . . receives information concerning . . . a final affirmative determination that resulted in an antidumping duty order under this subtitle . . . which shows changed circumstances sufficient to warrant a review of such determination . . . the administering authority . . . shall conduct a review of the determination . . . after publishing notice of the review in the Federal Register." 19 U.S.C. § 1675(b)(1).

[5] Unless otherwise indicated, further citations to the Customs Courts Act of 1980 are to the relevant portions of Title 28 of the U.S. Code, 2006 edition.

jurisdiction of "any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(2). Paragraph (4) of subsection (i) provides for jurisdiction of "any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in paragraphs (1)—(3) of this subsection . . . ." *Id*. § 1581(i)(4).

This action would appear to fall within the literal terms of the jurisdictional grant of § 1581(i)(4). However, "§ 1581(i)(4) 'may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate.'" *Trustees in Bankr. of N. Am. Rubber Thread Co.*, 593 F.3d at 1351 (citing *Int'l Custom Prods. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)) (quoting *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987), *cert. denied*, 484 U.S. 1041 (1988)); *see also id*. at 1353 ("§ 1581(i)(4) . . . is not available to circumvent relief that is or could have been available under other portions of § 1581").

By statute, the real remedy Acron seeks—a redetermined cash deposit rate—would have been available to Acron through participation in the first periodic administrative review of the Order. *See* Section 751(a) of the Tariff Act, 19 U.S.C. § 1675(a)(1) (requiring Commerce to conduct a periodic administrative review "if a request for such a review has been received" and to publish results of such review "together with . . . [the] estimated duty to be deposited"); *id*. § 1675(a)(2)(C) ("The determination under this paragraph shall be the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination *and for deposits of estimated duties*.") (emphasis added). The court, therefore, must determine

Case 1:11-cv-00496-TCS   Document 24   Filed 01/25/13   Page 10 of 16

**Court No. 11-00496**                                                                                                       **Page 10**

whether plaintiff has demonstrated factually that participating in a periodic administrative review and, if necessary, contesting the final results of that review according to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 28 U.S.C. § 1581(c) would have been a "manifestly inadequate" remedy. *Miller & Co.*, 824 F.2d at 963.

The party invoking a court's jurisdiction must establish the requisite jurisdictional facts by a preponderance of evidence, *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936), and must be given an opportunity to do so before dismissal is ordered, *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citations omitted). The "mere recitation of a basis for jurisdiction, by either a party or a court, cannot be controlling . . . ." *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (quotation omitted). Although jurisdictional facts normally are stated in the complaint, the court may consider matters outside the pleadings. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *see also Cedars-Sinai Med. Center v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993). Where, as here, a claim depends upon a waiver of sovereign immunity, a court will strictly construe the jurisdictional statute. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

The court considers the adequacy of a remedy stemming from the first review from the perspective of the factual circumstances existing as of the date plaintiff filed its action, December 7, 2011. *See Miller & Co.*, 824 F.2d at 963-64. By that date, plaintiff was on notice of various matters. Plaintiff brought this case after the Department's publication, on April 27, 2011, of the Termination Notice, which established an antidumping duty order that would enter into force on May 2, 2011 and announced a suspension of liquidation of entries of subject merchandise to begin on that date. *Termination Notice*, 76 Fed. Reg. at 23,570. This publication and the Department's regulations gave Acron notice of the dates that the POR would

begin and end. Specifically, the regulations provide, in pertinent part, that an initial periodic administrative review of an antidumping Order "will cover . . . entries . . . during the period from the date of suspension of liquidation . . . to the end of the month immediately preceding the anniversary month." 19 C.F.R. § 351.213(e)(1)(ii) (2011). Acron, therefore, was on notice that the first POR would begin on May 2, 2011, the date of suspension of liquidation, and end on March 31, 2012.[6] From binding precedent, Acron also was on notice at the time it filed its action that its participation in the first periodic administrative review of the Order required that an entry of its subject merchandise occur during the first POR. *See Allegheny Ludlum Corp. v. United States*, 346 F.3d 1368, 1371-73 (Fed. Cir. 2004).

To demonstrate that participation in the first administrative review (followed by a judicial challenge to the results, if necessary) would have been a "manifestly inadequate" remedy, plaintiff would have to show, as a factual matter, either that (1) it was precluded from pursuing that remedy; or (2) even if it had participated in the first review, the remedy resulting from such a review would have been inadequate. After review of the record the court compiled to resolve the question of jurisdiction, the court concludes that plaintiff has not made either showing.[7]

---

[6] Because an antidumping duty order, not a suspension of investigation, was in effect at the time this case was brought, the "anniversary month" was the calendar month in which the anniversary of the publication of the Order occurs, *i.e.*, April, and the first period of review of the Order, therefore, would conclude on March 31, 2012. *See* 19 C.F.R. § 351.102(b)(5) (defining "anniversary month").

[7] Defendant objects to the court's considering jurisdictional facts apparent from documents included in the joint submission that did not exist at the time Commerce denied Acron's request for a changed circumstances review and, accordingly, are not part of the administrative record of the changed circumstances review. Joint Submission Ordered by the Ct., Def.'s Attach. (Def.'s Objection to the Submission Ordered by the Ct.), at 1 (Oct. 23, 2012), ECF No. 15 ("Joint Submission"). Defendant submits that those documents are not relevant to whether the court has jurisdiction under § 1581(i)(4) and should not be part of the case record. *Id*. at 2. The court disagrees. The court may determine jurisdictional facts (continued…)

There is no dispute that as of the time of commencing this action, no entry of Acron's subject merchandise had occurred. At the December 20, 2012 hearing, Acron claimed that, as a practical matter, it could not have arranged for a sale of its merchandise for exportation to the United States that would have entered by that date or at any other time during the first POR. Oral Tr. 26, 35-37, 45. Acron indicated that the task was not achievable during the first POR due to "logistical" matters, including the difficulty of finding a customer, making financial arrangements, and shipping the merchandise. *Id*. The difficulty with this argument is that plaintiff has introduced no evidence from which the court could make a finding of a jurisdictional fact to that effect. Plaintiff was given the opportunity to submit documentation, which it did in the joint submission, and which the court has considered. Plaintiff also had the opportunity to seek to introduce additional evidence. But at the hearing, plaintiff informed the court that it did not wish to introduce any other evidence on the issue of jurisdiction and instead would rest on the joint submission. Oral Tr. 51. Nothing in the joint submission establishes as a fact that plaintiff could not have arranged a sale of its merchandise that would have resulted in an entry occurring prior to the time it commenced this action or, in any event, on or before

---

(continued…)

based on a *de novo* record. This is not necessarily the same record as the administrative record the court would consider were it to reach the merits of plaintiff's claim. The court's jurisdictional inquiry must consider those facts that go to the availability of the remedy that was or could have been available to plaintiff when the action was brought. *See Miller & Co. v. United States*, 824 F.2d 961, 963-64 (Fed. Cir. 1987). Under Court of Appeals precedent, this Court must give plaintiff the opportunity to offer evidence in support of its assertion of subject matter jurisdiction. *See Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 2011) (citations omitted).

March 31, 2012.[8]  At the time of bringing suit, more than seven months of the first POR already had transpired and nearly four months remained.

Although the extraordinarily high cash deposit rate of 253.98% is a self-evident financial burden on a sales transaction, plaintiff has not sought to introduce evidence that the deposit rate effectively precluded such a transaction that would have resulted in an entry during the POR, which plaintiff knew, or could have known from the Department's public notices, was ongoing at the time plaintiff filed suit.  From the evidence available to the court bearing on jurisdictional facts, the court must conclude that plaintiff has not met its burden of demonstrating that the remedy available through participation in the first review was unavailable to Acron.

Nor can the court conclude that the remedy offered by the first review would have been manifestly inadequate even were Acron to have pursued that course.  The first review was rescinded as to Acron, and also as to the other exporter/producer, MCC EuroChem, because no entries of the subject merchandise of either exporter occurred during the first POR.  *Notice of Rescission*, 77 Fed. Reg. at 65,533.  Had rescission not occurred as to Acron, Commerce would have been required by 19 U.S.C. § 1675(a) to redetermine a cash deposit rate for Acron's subject merchandise.  The ordinary statutory deadline for completion of the review would have been

---

[8] The joint submission discloses the fact that such a transaction occurred during the first POR (albeit a sale of merchandise that entered the United States just after the close of the first POR).  Joint Submission, Attach. 4 (Dep't of Commerce's Jun. 28, 2012 Notice of Intent to Rescind Administrative Review), at 2 (Oct. 23, 2012), ECF No. 15.  The court need not consider this fact as it had not occurred as of the time the action was commenced.  The salient point is that Acron has failed to produce evidence demonstrating that it could not have arranged for a sale producing an entry that occurred either before this action was commenced or at any other time within the first POR.

April 30, 2013.  *See* 19 U.S.C. § 1675(a)(3)(A).[9]  The court cannot conclude, as a matter of law, that a new cash deposit rate determined as of that date would have been a manifestly inadequate remedy.  Although it is possible that Commerce would have extended the review deadline by invoking its authority under § 1675(a)(3)(A), here the court cannot presume, as a matter of fact, that such an extension would have occurred.[10]

Rather than provide specific reasons why a redetermined cash deposit rate obtained by April 30, 2013 is not an adequate remedy, Acron makes the general argument that the imposition of the 253.98% cash deposit rate will "result in Plaintiff's exclusion from the U.S. market and [the] loss of its entire U.S. business."  Pl.'s Opp'n 13.  Alluding to this assertion at the hearing, plaintiff stated that Acron's revenue in the first year of the Order was less than 1% of its revenue in the final twelve months of the suspension agreement, which plaintiff indicated was in excess of $10 million.  Oral Tr. 27, 50.  Plaintiff argues, further, that because potential refunds provide inadequate compensation for the opportunity cost of being unable to participate in the U.S. market, a periodic review, even if hypothetically available, is a manifestly inadequate remedy.  *Id*. at 29-30; Pl.'s Opp'n 15.  Acron argues that it has never had an opportunity to challenge its cash deposit rate, which was based on Nevinka's sales and thus "bears no rational relationship to

---

[9] The statute provides that Commerce ordinarily must issue preliminary results of the review within 245 days of the last day of the anniversary month and final determination within 120 days after publication of the preliminary determination.  19 U.S.C. §1675(a)(3)(A).

[10] Although Commerce stated in the Initiation Notice that it intended to issue final results of the first periodic administrative review "not later than April 30, 2013," *Initiation of Antidumping & Countervailing Duty Admin. Reviews & Requests for Revocation in Part*, 77 Fed. Reg. 31,568, 31,569 (May 29, 2012), the court disregards this fact in resolving the question of jurisdiction as it refers to a statement of intent by the Department that had not been made as of the time this case was brought.

the pricing of Plaintiff's current imports." Pl.'s Opp'n 14.  It submits that Commerce has an obligation to correct inaccurate cash deposit rates based on outdated methodologies and must do so for Acron within a reasonable period of time upon termination of the suspension agreement. *Id*. at 14-15.  At the hearing, plaintiff also argued that the Department has used changed circumstances reviews in the past to recalculate cash deposit rates upon a country's graduation from nonmarket economy status to market economy status, as Russia had during the pendency of the suspension agreement, and alluded to the instance of the graduation of the German Democratic Republic.  Oral Tr. 33-34, 41-42.

These various arguments, which mostly go to the merits of plaintiff's claim, are not persuasive.  It is understandable that Acron would take issue with its being made subject to an extremely high deposit rate Commerce determined in 2000 for another producer using a methodology (the nonmarket economy methodology) no longer applicable to goods from the Russian Federation.  However, the narrow issue now before the court is not whether the deposit rate is unreasonable and prejudicial to Acron, nor is it whether Commerce must change that rate.  And the court does not see the relevance of the question of whether Acron could or could not have challenged that rate prior to bringing the instant action.  The issue before the court, rather, is whether plaintiff, in *this* action, may invoke 28 U.S.C. § 1581(i) jurisdiction to challenge that rate when another remedy—one expressly provided for by the Tariff Act and expressly made judicially reviewable by 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c)—was available at the time plaintiff filed its summons and complaint.  For the reasons discussed previously, the court concludes that plaintiff has not met its burden of demonstrating that, as a factual matter, the latter remedy, viewed as of the time of commencement of this action, was manifestly inadequate.

### III. CONCLUSION

In conclusion, the court determines, after considering all relevant jurisdictional facts, that 28 U.S.C. § 1581(i) does not provide it subject matter jurisdiction to hear plaintiff's claim. Accordingly, the court will enter judgment dismissing this action.

                                                /s/ Timothy C. Stanceu
                                                Timothy C. Stanceu
                                                Judge

Dated: January 25, 2013
       New York, New York